IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SPENCER TAYLOR,** | § § | |
| **Plaintiff** | § § | **CIVIL ACTION NO. 4:21-cv-00759** |
| Vs. | § § § § | |
| **FORWARD AIR SOLUTIONS, INC. and FORWARD AIR SERVICES, LLC** | § § § | **(JURY TRIAL DEMANDED)** |
| **Defendants** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff Spencer Taylor, ("Plaintiff" or "Mr. Taylor") filing this his Original Complaint against Defendants, Forward Air Solutions, Inc. and Forward Air Services, LLC his joint-employers ("Defendants" or "FAS") for race discrimination, failure to promote and unpaid overtime wages. In support of Plaintiff's cause of actions against Defendants, Plaintiff respectfully shows the court as follows:

### I.   JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant 28 U.S.C. §1331, 42 U.S.C. §1981 ("Section 1981"), and 29 U.S.C. § 201 *et seq.,* the Fair Labor Standards Act ("FLSA").

2. Plaintiff Spencer Taylor resides within Grimes County, Texas and worked for Defendants in Houston, Texas. Mr. Taylor is an African-American male who is 49 years old. At all times relevant to this Complaint, Mr. Taylor was Defendants' employee.  At all times relevant

to this Complaint, Taylor was/is protected by 42 U.S.C. §1981 and 29 U.S.C. § 201 *et seq*.

3. Defendant Forward Air Solutions, Inc. is a division of Forward Air Corporation, a billion-dollar company with over two hundred (200) locations in the United States, and headquartered in Greeneville, Tennessee, but which conducts business in the State of Texas. At all times relevant to Mr. Taylor's complaints, Defendant Forward Air Solutions, Inc. held itself out as Mr. Taylor's employer as interpreted under 42 U.S.C. §1981 and 29 U.S.C. § 201 *et seq*.

4. Defendant Forward Air Solutions, Inc. may be served with Plaintiff's Complaint by and through its Registered Agent, Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

5. Defendant Forward Air Services, LLC is also owned, controlled or parented by Forward Air Corporation. At all times relevant to Mr. Taylor's complaints, Defendant Forward Air Services, LLC also held itself out as Mr. Taylor's employer as interpreted under 42 U.S.C. §1981 and 29 U.S.C. § 201 *et seq*.

6. Defendant Forward Air Services, LLC may be served with Plaintiff's Complaint by and through its Registered Agent, Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

7. Upon information and belief Defendants Forward Air Solutions, Inc. and Forward Air Services, LLC were Plaintiff's joint employers at all times relevant to Plaintiff's lawsuit causes of action set forth herein.

8. The unlawful employment practices asserted in this complaint herein wholly or partly arose in the Southern District of Texas, Houston Division. Venue is appropriate in this court pursuant to 28 U.S.C. §1391(b).

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

9. Whenever in this pleading it is alleged that Defendants did any act or thing, or failed to do any act or thing, it is meant that Defendants' officers, owners, servants, employees, or representatives and management, including but not limited to Jason Johnson and/or Kat Laird, did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at FAS, or in the furtherance of Defendants' interests, or with the full authorization, permission, tolerance, and/or ratification of Defendants, or was done by an authorized member of management of Defendants or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendants' officers, owners, servants, employees, management and/or representatives.

## II.     FACTUAL BACKGROUND

10. Defendants are providers of ground transportation and related services throughout North America.

11. Spencer Taylor is an African-American male who was hired by Defendants in July 2013 as a company driver at FAS' IAH location. During Mr. Taylor's early years with FAS, he worked closely with FAS's Terminal Manager Eric Culbertson who, while working with Mr. Taylor, consistently applauded Mr. Taylor for his high work ethic and drive. In 2016, Mr. Culbertson transferred to Dallas but before leaving he told Mr. Taylor that he had left explicit instructions for Jason Johnson (Mr. Taylor's new supervisor) to promote Mr. Taylor based on Mr. Taylor's performance.

12. In that same timeframe, FAS failed or was in jeopardy of failing an audit based on its failure to comply with safety measures established by the DOT. According to Mr. Johnson, FAS' low DOT audit score(s) prompted him to assign Mr. Taylor into a new role as IAH's Driver Tracking

Log Auditor.

13. As a tracking-log auditor, Mr. Taylor was only required to submit daily logs to the Corporate Safety Department. However, eager for his promised promotion and to be recognized as a company asset, Mr. Taylor asked Mr. Johnson what more he could do to solidify a promotion. In response, Mr. Johnson told Mr. Taylor that he should show initiative and take on management responsibilities that would propel FAS' safety record upward.

14. In line with Mr. Johnson's directions, Mr. Taylor went above and beyond the duties that had been assigned to him in his role as IAH's tracking-log auditor, and beginning in 2016, Mr. Taylor: (a) Implemented a Compliance/Safety System for Forward Air Solutions in Humble, Texas; (b) oversaw the Maintenance/Procurement System for Forward Air Solutions in Humble, Texas; (c) initiated and managed (under supervision) the entire Recruiting/Onboarding System for Forward Air Solutions in Humble, Texas.

15. After having established numerous safety measures that would serve to improve FAS IAH's compliance record, Mr. Taylor received numerous telephone calls and e-mails from colleagues at other terminals to applaud him for a job well done. In fact, Tony Harvey, the head of the maintenance department, applauded Mr. Taylor because the processes he had implemented were not only increasing FAS IAH's safety compliance but they also served to lower maintenance repairs thereby saving FAS additional but unanticipated money.

16. Despite Mr. Taylor's work for FAS and increased duties, Mr. Johnson failed to officially change Mr. Taylor's title from driver to Recruiting/Safety manager. Instead, Mr. Johnson told Mr. Taylor that FAS's VP, Kat Laird, refused to allow him to promote him.

17. Still, in April 2016, Mr. Taylor was selected to take the Train-the-Trainer course to learn how to host orientation and potentially recruit new drivers. Mr. Taylor completed the training

on April 13, 2016 and in or around May 2016 Mr. Taylor was given more responsibility but without a promotion in title. Instead, soon thereafter at or around August 2017 Mr. Johnson authorized a raise in Mr. Taylor's hourly wage.

18. In another attempt to be noticed and demonstrate his commitment to mastering management skills and earning a promotion to a management role, Mr. Taylor chose to take the Train-the-Trainer course again and again successfully completed it on October 5, 2016 to ensure management at FAS that he had completely mastered the process for recruiting drivers.

19. Still, Mr. Taylor's hard work went unrecognized by management but not by his colleagues. In fact, rumors were floating around the company that Mr. Johnson was taking advantage of Mr. Taylor and would not promote him only because of his race (African-American) and because of the directive given to him (Jason Johnson) by VP Kat Laird.

20. In line with the rumors and Mr. Johnson's actual treatment toward Mr. Taylor, in March 2017 James Klein, a fellow employee, informed Mr. Taylor that Mr. Johnson had told him that Roger Gellis (Former President of FAS) did not want Mr. Taylor on the corporate side of the company (where primarily White employees worked). Instead, Mr. Johnson had disclosed to Mr. Klein that he wanted Mr. Taylor to move back on the dispatch side of the company (where primarily black and Hispanic employees worked).

21. From 2016 through the present date, Mr. Taylor also worked with numerous white managers who displayed a pattern of speaking to Mr. Taylor and other black employees in a demeaning and disparaging manner including yelling and cursing at Mr. Taylor.

22. While Mr. Taylor had reported these type of mistreatments to management before, on October 21, 2020, he specifically reported that he believed that his race (African-American) was unlawfully playing a part in Defendants' employment decisions regarding him and treatment toward

him.

23. In response, Defendants never told Mr. Taylor whether his complaint was investigated, its outcome, whether anyone has ever been held accountable for the actions against Mr. Taylor. In other words, Defendants ignored Mr. Taylor's race complaint.

24. Despite the clear division and disparate treatment based on race within the company, Mr. Taylor has successfully handled compliance and recruiting tasks for the company over the last four years. He has helped to ensure compliance with the regulatory standards required of FAS; increased employee safety awareness; facilitated communication and cooperation between management and employees on safety issues; provided direction on safety programs and procedures based on organizational goals and policies; generated reports for management review, identified issues and reporting results; created, monitored and implemented various safety policies and procedures.

25. Yet Mr. Taylor's has faced a hostile workplace because of his race (African-American). Specifically, he has faced exclusion from promotion opportunities and direct opposition to his promotion efforts. Further, management speaks to him in demeaning ways and refuses to update his title to reflect his work. Defendants do not treat its white employees similarly.

26. FAS has also retaliated against Mr. Taylor for his October 2020 race complaint by, for example, continuing to identify him in title as a driver only and failing to consider him for positions within FAS for which he was well qualified.

27. In or around June or July 2020, there were two vacant positions in the company very similar to the work Mr. Taylor had been doing for the last 3-4 years (processing/on-boarding all FAS IAH drivers) which would have served as a promotion to Mr. Taylor's position but Defendant refused to fairly consider Mr. Taylor, who was clearly qualified for the positions and who had continuously

expressed his interest in promotion within the company.

28.     Instead, without posting the positions so that Mr. Taylor could have an opportunity to apply, Defendants hired two inexperienced white women from FAS' customer service department for the vacant positions. Defendants hired Janelle Hite, a customer service representative with no prior recruiting training or experience, as a Recruiting Manager, and Linda Reeves, a billings representative with no prior recruiting training or experience, as the Manager over all Recruiting Managers.

29.     For the reasons stated herein, Mr. Taylor sues FAS for race discrimination and retaliation.

30.     Besides the race discrimination that Mr. Taylor has endured by Defendants, within the last three years, Defendants have increased Mr. Taylor's pay to compensate him in part for his increased duties but then discontinued paying him for his overtime hours.

31.     Specifically, Mr. Taylor's job regularly requires him to work more than 8 hours each week day and more than 40 hours each week. Mr. Taylor has records of his overtime hours. Further, Defendants require that Mr. Taylor perform road tests for their drivers on one to three Saturdays of each month of the year but instead of paying him overtime pay for the hours he works on those Saturdays (in addition to his normal 40+ work week on Monday through Friday), Defendants pay Mr. Taylor his straight hourly pay.  Mr. Taylor, however, is not exempt from overtime pay and should be paid overtime pay for his overtime hours.

32.      Mr. Taylor maintains records of his work hours. Defendants do not.

### III.   CAUSES OF ACTION

**A.     Race Discrimination pursuant to 42 U.S.C. §1981**

33.     Plaintiff repeats and re-alleges by reference each and every allegation contained in

the paragraphs 1 through 32 above and incorporates the same herein as though fully set forth.

34. Defendants, through their agents, supervisors, or employees violated Plaintiff's civil rights in violation of 42 U.S.C. §1981 by subjecting Plaintiff to disparate treatment and adverse employment terms and conditions based on his race, by excluding him from promotion(s) and promotion opportunities, by failing to announce jobs for which Plaintiff qualifies, by leaving Plaintiff out of job pools for which he qualifies and intentionally interfering with his employment by increasing his job duties but refusing to change his title, failing to offer him employment opportunities like his white counterparts and/or as offered to his non-black counterparts, and knowingly failing to pay him overtime to which he was entitled.

35. These violations consisted of discrimination of a continuous nature.

36. Such employment practices by Defendant are not job-related and are not consistent with business necessity.

37. Such employment practices are not based on (1) a seniority system, (2) merit system, (3) system measuring earnings by quantity or quality of production, or (4) or a differential based on any other factor other than race.

38. The above-described acts by Defendants caused Plaintiff substantial injury and damage. As a direct and proximate result of Defendants' race discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and liquidated damages in amounts that will be proven at trial.

39. Defendants acted with malice or reckless indifference to Plaintiff's state and federally protected rights to be free from discrimination in his employment based on his race. Further, Defendants' malice or reckless indifference towards Plaintiff led to the diminution and impairment in

whole or part, of his wages, benefits, promotions, privileges, and terms and conditions of employment. The above-described acts on Defendants' part caused Plaintiff substantial injury and damage.

40. As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

41. The above-described acts by Defendants against Plaintiff are clear and direct violations of Section 1981.

### B. RETALIATION PURSUANT TO SECTION 1981

42. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 1 through 41 above and incorporates the same herein as though fully set forth.

43. After complaining to management, Plaintiff was subsequently and repeatedly harassed, harangued, ignored, denied benefits and promotions, stripped of his office space, and confined to his position as "driver."

44. As herein alleged, Defendants illegally retaliated against Plaintiff because he complained of maltreatment and discrimination. Defendants had no legitimate business reasons for any of such acts. Each act of retaliation is in violation of 42 U.S.C. §1981.

45. As a direct and proximate result of Defendants' willful, knowing and intentional discrimination and retaliation against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

46. The above-described acts on Defendants' part were undertaken in violation of 42

U.S.C. §1981 proximately caused Plaintiff substantial injuries and damages.

### C. OVERTIME PAY AND RECORD-KEEPING VIOLATIONS OF THE FLSA

47. Plaintiff incorporates by reference all allegations contained in the paragraphs above as though fully set forth herein.

48. Section 207(a)(1) of the FLSA provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate of which he is employed.

49. Over the last three years, however, Defendant had a practice of failing to pay Plaintiff overtime pay for the overtime hours he worked at one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

50. There are no exemptions applicable to Plaintiff. For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint.

51. At all relevant time, Defendants have had gross operating revenues in excess of $500,000.00 per year.

52. Accordingly, Plaintiff seeks to recover from Defendants unpaid overtime compensation for the last three years, and an amount equal to all the unpaid overtime wages as liquidated damages, and reasonable attorneys' fees.

53. At all times relevant to this Complaint, Plaintiff was an employee of Defendants engaged in performing safety and onboarding duties for Defendants' nationwide transportation.

The work performed by Plaintiff was directly essential to Defendants' nationwide transportation business. Defendants engage in commerce.

54. Over the last three years and at the times pertinent to this Complaint, Defendants failed to comply with the FLSA in that Plaintiff has worked for Defendants in excess of the maximum hours provided by the FLSA, but provision was not made by Defendants and payments were not made to Plaintiff at a rate of time and one half for the hours worked by Plaintiffs in excess of the hours provided for by the FLSA in violation of the FLSA.

55. Defendants willfully and intentionally refused, and continues to refuse, to pay Plaintiff overtime wages as required by the FLSA.

56. Further, the FLSA requires employers to keep accurate records of hours worked by nonexempt employees. 29 USC § 211(c); 29 C.F.R.pt. 516.

57. In addition to the pay violations of the FLSA described above, Defendants also failed to keep proper time records as required by the FLSA.

## IV.   DAMAGES

58. Defendants' conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in his occupation. Because of Defendants' discrimination, retaliation and interference, Plaintiff has suffered, suffers, and will continue to suffer economic losses including past and future lost wages and benefits as well as humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, liquidated and consequential damages all of which amounts will be proved at trial.

59. Additionally, because of Defendants' unlawful and discriminatory conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him in the causes of actions set forth herein. Further, Plaintiff has agreed to pay his attorney reasonable attorney's fees for the

preparation and trial of these causes.

60. As a further consequence of Defendants' unlawful and discriminatory conduct, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

61. Plaintiff also seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendants. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendants do not promptly tender damages assessed against it and to avoid unjustly enriching Defendants.

## V.  JURY DEMAND

62. Plaintiff requests a trial by jury in this matter.

## VI.     PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendants for

a. Permanent injunction enjoining Defendants, their agents, successors, employees, and those acting in consort with Defendants from engaging in any employment practice which discriminates on the basis of race and/or protected complaints.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any other amendment(s) thereto, including but not limited to back pay, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Liquidated damages for Defendants' willful conduct;

f. Reasonable attorneys' fees, with conditional awards in the event of appeal;

g. Pre-judgment interest at the highest rate permitted by law;

h. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

i. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
Federal Bar No. 34512
Texas State Bar No. 2401318
**The Murphy Law Practice, PLLC**
2101 Citywest Blvd, Suite 100
Houston, Texas 77042
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email: marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF,
SPENCER TAYLOR**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March 2021 this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division.

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy